UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES JOHNSON, JR.,

                       Case No. No. 19-13539

          Plaintiff,                District Judge David M. Lawson

v.                            Magistrate Judge R. Steven Whalen

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Charles Johnson, Jr. brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [ECF No. 30] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 27] be DENIED.

## I.   PROCEDURAL HISTORY

On April 15, 2016, Plaintiff filed an application for SSI, alleging disability as of March 31, 2008.  ECF No. 24, PageID.336 (Tr. 26, 204).[1]  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on February 22, 2018 in Livonia, Michigan (Tr. 31).   Administrative Law Judge ("ALJ") David A. Mason, Jr. presided.   Plaintiff, represented by attorney Lloyd Pont testified (Tr.35-53), as did Vocational Expert ("VE") Annette K. Holder (Tr. 54-63).  On August 6, 2018, ALJ Mason determined that Plaintiff was not disabled (Tr. 13-26).

On October 18, 2019, the Appeals Council declined to review the ALJ's decision (Tr. 1-3).   Plaintiff filed suit in this Court on November 27, 2019.

## II.   BACKGROUND FACTS

Plaintiff, born August 2, 1974, was 44 at the time of the  administrative decision (Tr. 26, 204).   He left school after eighth grade and worked previously as a cook, lawn mower, machine operator, and maintenance worker (Tr. 230-231).   He alleges disability as a result of arthritis, a pinched nerve, a skin condition, and depression (Tr. 229).

### A.  Plaintiff's Testimony

*The ALJ prefaced the testimony by noting that Plaintiff brought a cane to the hearing* (Tr. 34).  *Plaintiff noted that the cane had been prescribed in January, 2018 and that he also*

---

[1]References to the administrative transcript (ECF No. 24) will henceforth be cited by transcript page number.

*used a back brace* (Tr. 35).

Plaintiff then offered the following testimony:

Before ceasing work in 2006, he worked at a machine shop and before that, as a maintenance person (Tr. 35).  He was unable to work due to back and left leg pain (Tr. 36). Plaintiff took medication to quell hallucinations but had nonetheless experienced a hallucination the day before the hearing (Tr. 37).  The hallucinations lasted for around five minutes and consisted of seeing things crawling on the floor (Tr. 37).  The hallucinations began two years before the hearing (Tr. 37).  He experienced no hallucinations for significant periods (Tr. 38).  He was seen by a psychiatrist every three months (Tr. 36).  He was not receiving counseling at the time of the hearing (Tr. 36).

Plaintiff stood 5'7" and weighed 208 pounds (Tr. 38).  He was single and had two grown children, 26 and 20 (Tr. 40).  He lived in a two-level dwelling he stairs twice a day (Tr. 40-41).  He used the stairs twice a day (Tr. 41).  He held a driver's license and was able to drive (Tr. 41).  His car trips averaged 20 minutes (Tr. 42).  He did not have hobbies or use social media (Tr. 42).  He smoked four cigarettes daily and used alcohol occasionally, but did not use street drugs (Tr. 43).  He treated with a pain management specialist, and experienced the medication side effect of nausea, drowsiness, and stomach pain (Tr. 43-44).

On a scale of one to ten, Plaintiff reported level "eight" back pain and level "nine" leg pain (Tr. 44).  His pain medication made him fall asleep (Tr. 44).  To relieve his pain he spent six waking hours each day reclining (Tr. 44).  He was able to dress himself so long as he

could hold onto a wall (Tr. 45).  His meal preparation was limited to making one pot of oatmeal every day (Tr. 45).  He was able to wash dishes, vacuum, and take out the trash but relied on his daughter to shop for groceries and do laundry (Tr. 45).

Plaintiff typically arose between 3:00 and 4:00 p.m. (Tr. 45).  He spent the rest of the day watching movies and napping (Tr. 46).  He had required the use of a cane for walking since 2009 (Tr. 46-47).  He was unable to walk for more than half a block, stand for more than three minutes, or sit for more than 20 at one time (Tr. 47-48).  His ability to carry was limited to transferring a gallon of milk from the refrigerator to the counter (Tr. 48).  He experienced difficulty bending but did not experience problems with his hands (Tr. 48).  He experienced problems concentrating and being around others (Tr. 48).  He typically fell asleep while watching movies (Tr. 49).

In response to questioning by his attorney, Plaintiff reported that concentrational problems, due mostly to pain, caused him to abandon activities mid-task (Tr. 49).  In addition to visual hallucinations, he experienced the auditory hallucination of someone calling his name (Tr. 50).  He left the house around four times a week for health-related appointments including therapy, medication, and injections (Tr. 50).  He experienced intermittent left hand numbness (Tr. 50-51).  He coped with the condition by using his right (dominant) hand to lift and carry (Tr. 51).  He was able to read text with "small words" but experienced problems with comprehending "big" words (Tr. 52).

-4-

### B.  Medical Records

### 1.  Records Related to Plaintiff's Treatment[2]

Academic testing at the age of six showed "low-average" intelligence with weakness in vocabulary but "relative strength" in "alertness to environmental details" (Tr. 310).  Middle school records state that Plaintiff was eligible for participation in an Individualized Education Program ("IEP") based on a learning disability (Tr. 328).  Testing showed a verbal IQ of 87; performance, 91; and full scale, 87 (Tr. 329).  His reading skills were placed at the 2.4-grade level and mathematics, 4.6 (Tr. 330).

December, 2015 treating records by Saif Cheema, M.D. note a normal gait and although Plaintiff carried a cane, he "did not seem to have a need for it" (Tr. 333).  Dr. Cheema  declined to "find any basis for medical disability" (Tr. 333).

In January, 2016, Plaintiff sought treatment with Bharat Tolia, M.D., reporting back pain since being stabbed in the left hip in 2008 (Tr. 352).  Plaintiff reported the use of a cane (Tr. 352).  Dr. Tolia noted a normal mental status with normal recall, speech and language functions (Tr. 353).  Plaintiff exhibited a normal gait (Tr. 353).  February, 2016 treating records state that nerve conduction tests were normal with EMG testing showing bilateral L5-S1 radiculopathy (Tr. 354, 356).  In April, 2016, Plaintiff exhibited a normal gait, mood, and affect (Tr. 357).  An MRI of the lumbar spine from the same month showed a disc protrusion

---

[2]Treating records created prior to the SSI application date of April 15, 2016 are included for background purposes only.

at L4-L5 and L5-S1 with mild to moderate foraminal stenosis but otherwise mild findings (Tr. 449). In June, 2016, Plaintiff reported left hand and arm numbness (Tr. 358). He exhibited full muscle strength (Tr. 359, 507). August, 2016 nerve conduction and EMG studies of the lower extremities were normal (Tr. 452). In November, 2016, Plaintiff reported that two weeks of physical therapy made his pain worse (Tr. 440). He reported that he ran out of pain medication one week early (Tr. 440).

Based on a March, 2017 assessment, case management services, periodic psychiatric evaluations, and individual and group therapy were recommended (Tr. 381). Plaintiff reported that he had experienced depression his entire life but denied mental health treatment (Tr. 390). He reported former work in maintenance and landscaping (Tr. 394). His criminal history consisted of 1994, 1996, 2004, and 2008 convictions for "possession with intent to deliver" (Tr. 401). Plaintiff was advised to work with a lawyer to secure disability benefits (Tr. 383). Assessment records include a diagnosis of schizoaffective disorder, and bipolar disorder based on reports of "ongoing mood fluctuations with paranoia and visual hallucinations" (Tr. 404).

From January to September, 2017, pain management specialist Mazher Hussain, M.D. administered epidural steroid injections without complications (Tr. 407, 410, 438). In April, 2017, Plaintiff denied medication side effects from either Percocet or Tramadol (Tr. 423). He denied concentrational problems (Tr. 424). In July, 2017, he reported that lower back pain interfered with his daily activities (Tr. 412). He demonstrated an antalgic gait and used a cane

(Tr. 414).  He exhibited lumbar spine tenderness but no other abnormalities (Tr. 418, 483).

He admitted to non-medically prescribed marijuana use (Tr. 413).  In August, 2017, Plaintiff

sought emergency treatment for back pain (Tr. 455).  He was administered Toradol before

release the same day (Tr. 455).  Treating records from the same month state a diagnosis of

Carpal Tunnel Syndrome ("CTS") on the left (Tr. 478).  September, 2017 records note the

prescriptions of Lyria and Percocet for body pain (Tr. 406).  Records from the next month

showed a normal gait (Tr. 475).  November nerve conduction studies of the lower extremities

were normal but an EMG showed L4-L5 radiculopathy (Tr. 469).  Plaintiff demonstrated a

normal gait and neurological function (Tr. 470).  December, 2017 counseling records note

Plaintiff's report that he was "decent" and "just a little paranoid here and there" (Tr. 514).

He requested an increase of Risperidone to further reduce paranoia (Tr. 514).  His behavior

and affect were within normal limits (Tr. 516).

January, 2018 case manager records note that Plaintiff sought disability-related

paperwork but denied other needs or concerns (Tr. 511). His condition was deemed "fairly

stable" with minimal or minor problems (Tr. 521).  A Mental Impairment Questionnaire form

notes a flat affect, depressed mood, and hallucinations (Tr. 561).  Plaintiff's symptoms

included mood disturbances, paranoid thinking, withdrawal, hallucinations, and sleep

disturbances (Tr. 562).  Plaintiff's social and concentrational limitations were deemed

moderate (Tr. 563). He was expected to miss at least four days of work each month (Tr. 564).

 The same month, Plaintiff was prescribed a cane for an "unsteady gait" (Tr. 566).

## 2. Non-Treating Records

In August, 2016, Firoza B. VanHorn, Psy.D. performed a consultative psychological examination, noting Plaintiff's report of sleep disturbances, nerve damage, arthritis, and depression (Tr. 373). Plaintiff denied psychological treatment (Tr. 373-374). He reported that he was able to perform personal care activities, held a driver's licence, and interacted with friends by telephone (Tr. 375).

Dr. VanHorn found normal immediate and remote memory with a "fairly good" attention span (Tr. 375-376). She diagnosed Plaintiff with "somatic symptom disorder with predominant pain" (Tr. 377). She concluded that Plaintiff could "understand simple, repetitive and tangible tasks, pay attention, focus, interact with people in general, [and] follow direction and rules" (Tr. 377). She found that Plaintiff could adapt to changes in his environment and could handle his own finances (Tr. 377).

The same month, Rom Krauciunas, Ph.D. performed a non-examining review of the treating and consultative records, finding that Plaintiff experienced moderate limitation in social functioning and concentration, persistence, or pace (Tr. 115).

In April, 2018, Mark Mounayer, M.D. performed a consultative physical examination, noting Plaintiff's allegations of lower back and left lower extremity pain with a lifting maximum of five pounds (Tr. 570). Dr. Mounayer observed a mild right-sided limp and the use of a cane (Tr. 571). Plaintiff displayed a limited range of lumbar spine motion but otherwise a normal range of motion and normal grip strength with mild difficulty squatting

(Tr. 571). Dr. Mounayer found that while Plaintiff used a cane for pain relief, it was "not absolutely required" (Tr. 572). He found that Plaintiff could lift/carry up to 50 pounds occasionally and up to 20 frequently (Tr. 573). He found that Plaintiff could sit, stand, or walk for up to 30 minutes at one time for a total of four hours of each exertional activity in an eight-hour workday (Tr. 574). He found that Plaintiff could perform occasional postural activity except for the ability to climb frequently (Tr. 576). He found that Plaintiff should be limited to frequent exposure to unprotected heights and moving mechanical parts (Tr. 577).

### C. Vocational Testimony

Plaintiff reported that his jobs of machine operator and maintenance work required him to lift over 100 pounds but the lawn service worker position did not require any significant lifting (Tr. 53). Citing job titles found in the *Dictionary of Occupational Titles* ("*DOT*"), the VE classified Plaintiff's past work as a machine operator as semiskilled and exertionally medium; maintenance work, unskilled/medium; and lawn servicer, unskilled/heavy[3] (Tr. 57, 293).

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> [L]imited to light work. The individual could stand or walk for six of eight hours, or two hours at a time, could sit for six of eight hours, for one hour at a time. After 30 minutes of sitting, he can get up and move about two to three minutes, while remaining on task. Occasional ramps and stairs, with a handrail. No ladders, ropes, or scaffolds. Can occasionally balance, stoop, kneel, crouch, and crawl. No excessive vibration or vibrating air or hand tools. Bilateral occasional foot controls, limited to simple, routine, repetitive one, two, three-step tasks -- that's less than constant -- not requiring a specific production rate in a work environment free of fast paced production requirements involving only simple work-related decision, with few, if any, workplace changes. Occasional contact with co-workers, supervisors, and the general public. The individual would be off task 8%. And frequent handling, fingering, and feeling with the left hand (Tr. 54).

The VE testified that the above limitations precluded Plaintiff's past relevant work but would allow for the unskilled, exertionally light work of a bench assembler (80,000 positions in the national economy); inspector (75,000); and packer (70,000) (Tr. 55). She testified that the need to use a cane to stand and walk would eliminate all of the above jobs but would allow for the unskilled, sedentary work of an assembler (70,000); sorter (80,000); and packer (60,000) (Tr. 56). She stated that the modifiers of "no uneven, rough terrain or slippery walking surfaces" would not change the job numbers (Tr. 56-57). She stated that the need to be off task for more than 15 percent of the workday, recline for an hour each eight-hour workday, or, miss two days of work each month would be work preclusive (Tr. 56). She stated that her testimony was consistent with the information found in the *DOT,* adding that the testimony as to uneven terrain, use of a cane, and

absenteeism was based on her professional experience (Tr. 57).

In response to questioning by Plaintiff's attorney, the VE testified that the need to stand for five minutes with the use of a cane every 30 minutes would be work preclusive (Tr. 58). The VE reported that the cited jobs involved "working independently, table work, not as a team, and not in tandem" and "simple, demonstration type of work" (Tr. 62).

*The ALJ closed the hearing by noting that he would order a consultative physical examination* (Tr. 64).

### D. The ALJ's Determination

Citing the medical transcript, ALJ Mason found that Plaintiff experienced the severe impairments of "residuals from stab wound to the left leg; degenerative disc disease of the lumbar spine; carpal tunnel syndrome of the left upper extremity; schizoaffective disorder; osteoarthritis of the right hip; and obesity" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16). He found mild limitation in understanding, remembering, or applying information and adaption and moderate limitation in interacting with others and concentration, persistence, or pace (Tr. 17-18).

ALJ Mason determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following restrictions:

> [S]tand/walk 6 hours total in an 8-hour workday for 2 hours at a time and sit 6 hours total in an 8-hour workday for 1 hour at a time but after 30 minutes of sitting can get up and move about for 2-3 minutes while remaining on task; occasional ramps/stairs with a handrail; no ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no excessive vibration; no vibrating air or hand tools; occasional foot controls bilaterally; simple, routine, repetitive, one- to three- step tasks (less than constant) not requiring a specific production rate, in a work environment free of fast-paced production requirements, involving only simple work-related decisions with few, if any, work place changes; occasional contact with coworkers, supervisors, and the general public; off task 8% of the workday; and frequent handling, fingering, and feeling with the left hand..

Citing the VE's testimony (Tr. 55), the ALJ determined that Plaintiff was unable to perform any of his past relevant work but could work as a bench assembler, inspector, and packer (Tr. 26). He concluded that Plaintiff had not been disabled between the application date of April 15, 2016 and the August 6, 2018 findings (Tr. 26).

The ALJ declined to adopt Plaintiff's allegations of disabling limitation. As to the mental limitations, the ALJ noted "no persuasive evidence of a current and significant deficit" in the ability to process information or concentrate, citing consultative records showing a normal memory and the absence of hallucinations (Tr. 17). The ALJ noted that Plaintiff had not received emergency or inpatient mental health treatment (Tr. 18).

As to the physical limitations, the ALJ cited a negative August, 2016 EMG study of the lower extremities in support of the RFC for a limited range of exertionally light work (Tr. 20).  The ALJ acknowledged that clinical testing showed positive straight leg raising and an antalgic gait but at other times, a full range of motion, a normal gait, and full muscle strength (Tr. 20).  He cited records noting only a "mild limp" and Dr. Mounayer's conclusion that the use of a cane was not required (Tr. 21).  The ALJ noted that the allegations of CTS were unsupported by EMG studies and that Plaintiff demonstrated full grip strength at a consultative examination (Tr. 21).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

-13-

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS

Plaintiff, proceeding *pro se*, contests the ALJ's non-disability finding.  ECF No. 27, PageID.726-729.  He disputes the conclusion that he did not require a cane, noting that in January, 2018, a medical source prescribed the use of a cane. *Id.* at 726 (*citing* Tr. 21).  He faults the ALJ for declining to adopt Dr. Hussein's  observations of an antalgic gait.  *Id.* at 727.  In addition, Plaintiff seems to contend that while headaches did not render him disabled for the entire two-year-plus period under consideration, the condition caused significant limitation for a "closed period" of at least 12 months. *Id.*   In further support of his argument for benefits, he attaches records to his brief not reviewed by the ALJ.  *Id.* at 732-735.

In his motion for summary judgment, Defendant acknowledges that Plaintiff was prescribed the use of a cane in January, 2018, but points out that the prescription is unaccompanied by supporting medical records. *Defendant's Brief,* ECF No. 30, PageID.753.  Defendant contends that the ALJ's conclusion that Plaintiff did not  require the use of a cane is supported by the treating records and Dr. Mounayer's consultative findings.  *Id.* at 754.

Defendant argues that the ALJ's finding that Plaintiff's headaches (reported on one occasion) did not meet the 12-month durational requirement required to establish a significant work-related limitation is supported by Plaintiff's denial of headaches on more than a dozen occasions. *Id.* at 750 (*citing* Tr. 16). Finally, Defendant contends that the material attached to the brief showing an August, 2019 voucher for housing assistance and a handicap license plate does not warrant a remand. *Id.* at 763.

In response to Defendant's motion, Plaintiff asserts that the ALJ erred by "cherry pick[ing]" the record for evidence supporting the non-disability determination and that the allegations of physical limitation were improperly discounted. ECF No. 31, PageID.771-773.

### A.  Substantial Evidence Supports the RFC for Exertionally Light Work

Plaintiff's argument that the ALJ erred by finding that he did not require the use of a cane is construed to state that the Residual Functional Capacity ("RFC") found in the administrative opinion did not reflect the full degree of physical limitation.[4]

---

[4]

Plaintiff does not challenge the ALJ's findings regarding his mental health conditions. My review of the record indicates that the psychological limitations of moderate social and concentrational impairment are well addressed by the modifiers in the RFC:

> [S]imple, routine, repetitive, one- to three- step tasks (less than constant) not requiring a specific production rate, in a work environment free of fast-paced production requirements, involving only simple work- related decisions with few, if any, work place changes; occasional contact with coworkers, supervisors, and the general public; off task 8% of the workday (Tr. 18).

An RFC describes an individual's residual abilities. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once [his] limitations have been taken into account" *Id.* (*quoting* 20 C.F.R. § 416.945). In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. §§ 404.1545(a)(1); 416.945 (RFC must be based on all "relevant evidence"). The ALJ must consider the alleged physical, mental, and environmental restrictions in crafting the RFC. §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (June 2, 1996).  An ALJ is permitted to draw from the record as a whole in crafting the RFC. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir. September 5, 2013)(rejecting contention ALJ was "bound" by one medical opinion - ALJ "properly based her RFC determination on *all* the evidence of record")(emphasis added); SSR 96-8p at *2.

As to the alleged need for a cane, the ALJ found as follows:

> Balancing the findings in Dr. Tolia's notes, Dr. Hussein's notes, and Dr. Mounayer's (consultative) report, the undersigned is not convinced that the claimant requires a cane for standing or walking or is incapable of meeting the demands of light work, which involves standing/walking up to 6 hours in an 8-hour workday (Tr. 21).

The ALJ noted that while both Dr. Tolia and Dr. Hussein observed Plaintiff using a cane on some occasions, Dr. Tolia's records included observations of full muscle strength, a normal range of motion, normal neurological signs, a normal gait, and the ability to walk on heels and toes (Tr. 21).  He cited Dr. Mounayer's observation of only a mild

-17-

right-sided limp and mild difficulty heel and toe walking and conclusion that the use of a cane was "not absolutely required" (Tr. 21 *citing* 752). The ALJ's discussion and conclusions regarding the alleged need for a cane are supported by my own review of the evidence showing a normal gait and full muscle strength (Tr. 353, 359, 475) and normal nerve conduction testing of the lower extremities (Tr. 354, 452, 469).

For the same reasons, the ALJ's rejection of Plaintiff's alleged degree of limitation should not be disturbed. The ALJ began his review of the claims by summarizing Plaintiff's allegations that he was not able to carry any meaningful weight and since 2009 had to "hold on to the wall to walk" without a cane (Tr. 19-20). The ALJ went on to note that these allegations were contradicted by objective testing, including negative April, 2016 EMG testing and MRIs of the lumbar spine finding no more than mild to moderate abnormalities; clinical observations of a normal gait, normal range of motion, and grip strength; and Plaintiff's April, 2017 statement that he was required to walk in lieu of other means of transportation (Tr. 21). The ALJ permissibly concluded that Plaintiff's ability to walk to "attend to his business" undermined his claim that he was unable to walk even half a block with the use of a cane and was required to "hold on to walls" while walking without the use of a cane (Tr. 21).

Likewise, while Plaintiff alleged that he was drowsy due to pain medication side effects (Tr. 43-44), he denied such side effects to his treating sources (Tr. 423). As such, the ALJ's rejection of Plaintiff's alleged degree of limitation, supported by the record and

is well explained, it is entitled to deference. *See Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(An ALJ's assessment of claimant's allegations entitled to "great weight")(*see also Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989))(*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))(ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

### 2. Headaches

Plaintiff's objection to the ALJ's finding that the condition of headaches did not cause signficant work-related limitation is construed as a challenge to the ALJ's findings at Step Two of the sequential analysis.  The finding that an alleged condition causes significant workplace impairment is "'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. February 22, 2008)(*quoting Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)).

At Step Two of his analysis, the ALJ provided the following rationale to support his finding that the condition of headaches was not a "severe impairment," *i.e.* did not create a significant degree of work-related limitation:

> The medical records show that the claimant briefly experienced headaches as a side effect of Trazadone . . . . He stopped taking Trazadone once he determined that it was causing headaches and he has not reported any recurrent head pain since then. As such, the history of headaches is not a severe impairment because the evidence does not show that it more than minimally affected the claimant's ability to perform basic work activities for a consecutive 12-month period (Tr. 16).

The ALJ's finding that headaches did create any significant degree of work-related limitation should remain undisturbed for multiple reasons.  The ALJ noted that Plaintiff's

isolated report of headaches (Tr. 362) ceased when he stopped taking Trazadone.  Aside from this complaint, the record shows that Plaintiff denied headaches on numerous occasions (Tr. 418, 421, 424, 432, 436, 500 506).  For identical reasons, the ALJ did not err in finding that the condition did not last for at least 12-months as required to establish disability under 42 U.S.C. §423(d)(1)(A).

**B.  Plaintiff Not Entitled to a Remand Based on the Newer Evidence**

Attached to Plaintiff's brief is a "Verification of Disability" dated August 29, 2019 entitling Plaintiff to a housing voucher based on a finding of disability.  ECF No. 27, PageID.732-733.  The form is signed by Ashraf Khan, D.O. *Id.*  Plaintiff also attaches a photo of a "handicap" Michigan license plate*.  Id.* at 735.

A Court's review of records submitted subsequent to the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). For a remand for review of newer records, the sixth sentence of 42 U.S.C. § 406(g) states that the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff's inclusion of the new material, construed as a motion for a Sentence Six remand to the administrative level for review of the new material, should not be granted. Most obviously, the "disability" finding of August 29, 2019 was made over one year after the ALJ's August 6, 2018 determination.   Because this evidence relates to Plaintiff's condition well after the period under consideration, it is intrinsically irrelevant to the present application for benefits (Tr. 26). *See Wyatt v. Secretary of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)(*accord Sizemore*, 865 F.2d at 712)("Evidence of a subsequent deterioration or change in condition" following the date of the administrative determination not "material" to the ALJ's decision).  If Plaintiff believes that his condition has worsened since the date of the administrative opinion, his remedy is to make an application for benefits for the more recent period.  *Sizemore,* at 712.

Moreover, Plaintiff has failed to show that the undated license plate was issued during the period under consideration by the ALJ.  Even assuming that the license plate was issued prior to the ALJ's August 6, 2018 determination, Plaintiff has not offered "good cause" for its tardy submission.

 After careful review of the administrative transcript, I conclude that the ALJ did not err in denying Plaintiff's SSI benefits. Because the ALJ's decision is comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.  Likewise, the newly submitted evidence does not provide grounds for a remand under the sixth sentence of §

405(g).

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 30] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 27] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

<u>s/R. Steven Whalen</u>
R. Steven Whalen
United States Magistrate Judge

Dated: January 7, 2021

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on January 7, 2021 electronically and/or by U.S. mail.

<u>s/Carolyn M. Ciesla</u>
Case Manager